# Case No. 18,208.

## The ZENOBIA.

### [Abb. Adm. 48.] [1]

### District Court, S. D. New York. July, 1847.

PROCEEDINGS IN REM AND IN PERSONAM—JOINDER IN ONE ACTION—ELECTION OF REMEDIES—CONTRACT OF AFFREIGHTMENT—BREACH BY VESSEL.

1. Where a libel is filed for a cause of action upon which both vessel and master may be together liable, the court will not make an order that the libelant elect between the remedy in rem and that in personam, nor that he submit to have either the arrest of the respondent or the attachment against the vessel vacated.

2. In respect to the liability of the ship for contracts made with the master for transportation for hire in the regular course of the vessel's occupation, the law makes no distinction between the transportation of passengers and of merchandise.

[Cited in The Director, 26 Fed. 709.]

3. Where an agreement is entered into between the master of a vessel and a passenger, for the transportation of the latter, with his baggage, and passage-money is paid in advance, and the agreement is unperformed through the fault of the master, the ship is liable, in specie, to refund the advance passage-money, and to pay damages for any failure to deliver the goods shipped.

[Cited in The Director, 26 Fed. 709.]

4. There is no abstract incompatibility between proceedings in rem and proceedings in personam, which forbids them to be joined in one action where such joinder is calculated to advance the ends of substantial justice.

[Cited in The Monte A., 12 Fed. 337; The Director, 26 Fed. 709; The Hudson, 15 Fed. 176; The J. F. Warner, 22 Fed. 344; Joice v. Canal Boats, 32 Fed. 554. Cited in brief in Heney v. The Josie, 59 Fed. 782.]

[1] [Reported by Abbott Brothers.]

5. Where both the vessel and the master or owner are conjointly liable upon a contract of affreightment, the personal remedy, and the remedy against the vessel, may be sought in one and the same action.

[Cited in The Director, 26 Fed. 711; The Baracoa, 44 Fed. 103.]

This was a libel filed by Henry J. Carr against the bark Zenobia, in rem, and also in personam against her master, A. R. Cronstadt, to recover damages for the non-performance of a contract of affreightment. The libel stated in substance that the libellant, in November, 1847, at Whampoa, China, engaged passage for himself and family, with their personal baggage, and certain merchandise or freight, on board the Zenobia, for the United States, and thereupon shipped sundry cases of merchandise, among which was a chest of drawers containing twenty-five hundred dollars in specie. The agreement was made with Cronstadt, the master of the bark, to whom libellant paid $150 in advance, being one half the passage-money stipulated. November 28th was the appointed day of sailing, but the vessel sailed two days previous to that time, unknown to libellant, leaving him and his family behind. The libellant followed the Zenobia to this country, and arrived, as it happened, a few days before her. On the arrival of the Zenobia he went on board and claimed the property shipped by him. The master, however, refused to deliver it, or to recognize the libellant as its owner, and moreover refused to make the proper entries upon the ship's manifest, which were necessary to enable the libellant to obtain the property from the custom-house. For a fuller statement of the facts, reference is made to the case upon the final hearing, December, 1847, which is reported, post, in its order of time. The libel, as amended under the direction of the court upon this hearing, and the substance of the answer, are there given. Upon this libel, process was issued against the master, upon which he was arrested and held to bail; and also against the bark, for which the usual stipulations were given on the part of the owners. The master then moved in the cause, "that the libellant be required to elect whether he would proceed in rem against the vessel, or in personam against the master; and that either the arrest of the master or the attachment against the vessel should be vacated."

Francis B. Cutting, in support of the exceptions.

Abner Benedict, opposed.

BETTS, District Judge. The libel being filed for a double cause of action on the shipping contract and for its tortious violation by the master, for which the ship and master may be unitedly liable, the case is not one in which the court will compel the libellant to elect which branch of his remedy he will pursue. He may maintain the suit in personam against the master for wrongfully

abandoning the libellant and his family in China, and for abstracting or withholding, in the exercise of his authority over the ship and her lading. the specie and baggage shipped on board, and may therein seek damages against the master beyond the liability of the ship. According to the practice in this district, he may also pursue his claim in a joint action against the ship in rem and the master personally, upon the contract of affreightment, and for the transportation of himself and family (Betts, Adm. Prac. 20); provided he establishes a case within the jurisdiction of the court.

The motion to dismiss the suit, because of incongruity or multifariousness in the demands, is therefore denied.

The owner of the Zenobia, David Carnigie, intervened and filed exceptions to the libel for insufficiency. The objection raised by the first exception was, that the· court had no jurisdiction to enforce such a claim as was preferred in the libel against the vessel and owner. The second and third exceptions raised the objection, that at any rate the claim was not one which could be enforced both against the vessel in rem, and against the master in personam, in the same libel. The remaining exceptions related only to the form of the libel, as tested by the rules promulgated by the supreme court, and raised no questions of importance. These exceptions, save one only, were allowed, and the libel ordered to be amended in the particulars to which they related. The opinion of the court relates almost wholly to the questions raised upon the liability of the vessel for the cause of action shown, and upon the propriety of uniting the claim against the vessel and the personal claim against the master in one action.

BETTS, District Judge. The allegations of the libel are deficient in perspicuity and certainty; but I think a reasonable construction of the pleading as a whole, may regard it in effect to represent the master as having wilfully withheld the property shipped by the libellant on board the vessel, and as having put impediments in the libellant's way on ship-board and at the custom-house, and prevented him from receiving its delivery at this port, and as refusing to repay the passage-money advanced to him, or to recognize the libellant· as having any right to or interest in the baggage and other goods shipped by him on the vessel.

The first legal point raised against the action is, that the ship is not liable for the undertaking of the master, to bring the libellant and family to this country as passengers. It is unnecessary to consider whether the vessel would be chargeable with a lien upon a naked agreement for the carriage of libellant, for in this case a part of the passage-money was actually paid in advance.

The agreement was plainly within the au-thority of the master, and the receipt of the money was for the benefit of the ship-owner, and was so much freight paid. In respect to the liability of the ship for contracts of transportation made with the master, the law makes no distinction between passengers and merchandise, each being alike carried for hire, and in the regular course of the vessel's occupation in trade and commerce. Wolf v. Summers, 2 Camp. 631; Mulloy v. Backer, 5 East, 316; Howland v. The Lavinia [Case No. 6,797]; Griggs v. Austin, 3 Pick. 20.

There is no reasonable ground for doubt, that if the libellant had paid in advance the freight of his goods, and the master had designedly left them behind in China, the vessel would be answerable to the amount of freight so received. This would be both because the vessel is bound in specie for the fulfilment of the contract of the master made within the scope of his powers (3 Kent, Comm. 218, note; The Volunteer [Case No. 16,991]; The Phebe [Id. 11.064]; Curt. Merch. Seam. 169), and because the vessel is liable for the repayment of freight not earned by the wilful failure to perform the contract of affreightment (Mashiter v. Buller, 1 Camp. 84; Pitman v. Hooper [Case No. 11,185]; Watson v. Duy·kinck, 3 Johns. 335; Griggs v. Austin, 3 Pick. 20).

It is equally clear, that the neglect or refusal of the master. without justifiable cause, to deliver the goods at the port of destination, renders the owner, and consequently the ship, responsible upon the contract of affreightment. Abb. Shipp. 156, 275; Curt. Merch. Seam. 198.

These principles. so well established in their application to contracts for the transportation of merchandise, are applicable also to agreements for the carrying of passengers. The ship is therefore liable in specie to refund the passage-money advanced by the libellant, and to pay damages for the non-delivery of the goods shipped by him.

The libellant is entitled to the responsibility of the ship to cover these liabilities of the master, and is not obliged to rely solely upon the personal responsibility of the master or owners. Had application been made to the court to reduce the amount of bonds exacted from the ship, the court would have taken care that the owners were not charged with an unreasonable amount of security, and would have discharged the attachment upon stipulations sufficient to cover the probable recovery and costs. But the exception taken by the claimants to the right of libellant to maintain upon the facts charged an action in rem, cannot be sustained.

The next general point made by the exceptions, is, that this suit cannot be prosecuted conjointly in rem and in personam. This objection is supported by the language of Judge Story, in Citizens' Bank v. Nantucket Steamboat Co. [Case No. 2.730]. In that case, a libel in rem against a steamboat, and in personam, against her master and owners, was

filed to recover the value of bank-bills entrusted to the master for transportation, and lost on the passage. The judge remarked, that he knew of no principle or authority in the general jurisprudence of the courts of admiralty which would justify such a joinder of proceedings, so very different in their nature and character and decretal effect. "On the contrary," he says, "in this court, every practice of this sort has been constantly discountenanced as irregular and improper." And again he says, "In cases of collision, the injured party may proceed in rem or in personam, or successively in each way, until he has full satisfaction. But I do not understand how the proceedings can be blended in the libel."

The objection thus suggested to the joinder of the two remedies was evidently placed upon a supposed incompatibility between the two modes of proceeding, rendering them improper to be combined in one action. It is not because, in the case before him, there was not both a personal remedy and a remedy against the ship, that the learned judge disapproves the practice referred to, but it is upon the ground that the proceeding in personam and the proceeding in rem are "so very different in their nature and character and decretal effect." It is obvious therefore, that the objection, if sound, applies in all cases, irrespective of the nature of the cause of action.

Conceding the view taken by the learned judge to have been a correct exposition of the practice as established in October, 1841, the date of the decision above cited, it must be regarded as untenable since the adoption of the rules of the supreme court, framed pursuant to the act of congress of August 23, 1842 (5 Stat. 518, c. 188, § 6). Those rules make specific provision in respect to the mode of pursuing remedies by libellants in several classes of cases. They authorize libellants in suits for mariners' wages, for pilotage, or for damages by collision. to proceed against the ship, and master, or owner, or against the ship alone, or against the master or owner alone, in personam. Rules 13, 14, 15. In cases of maritime hypothecation by the master, or for salvage, the libellant must elect between the remedy in rem and a personal suit. Rules 17, 19. And in suits for assault and battery he is restricted to a suit in personam alone. Clearly, therefore, it can be no longer contended that a joinder of the two remedies in one action is impracticable, or inconsistent with the theory upon which the court proceeds in awarding relief; or that there is any incompatibility in principle between the two forms of proceeding, either in their nature, character, or decretal effect, which forbids their union in one action, in those cases in which such joinder is calculated to advance the interests of substantial justice.

It is true that the case of a suit for damages for non-fulfilment of a contract of affreightment, or one brought to recover back freight paid in advance but not earned, is unprovided for by either of the supreme court rules. Those rules do not contain any specific authority to unite the two remedies in claims of that character. They do not, however, forbid the joinder. The consequence is, that such cases fall within the scope of rule 46, which prescribes that in all cases not provided for by the foregoing rules, the district and circuit courts are to regulate the practice of those courts respectively, in such manner as they shall deem most expedient for the administration of justice. The practice in respect to the question under consideration is therefore left to be regulated at the discretion of the courts in the various districts.

I perceive no principle demanding a distinction in respect to joining in the same action a personal remedy with one against the ship, between an action founded upon a contract of affreightment, express or implied, and one brought to recover wages or pilotage, or for damages by collision. The considerations of convenience which dictated the permission given by the rules of the supreme court, to combine the actions in the last mentioned cases, seem to apply with equal force to the case now before the court.

The practice in this district, on the instance side of the court, has, moreover, always been different, it is believed, from that pursued in the Massachusetts district, as stated by Judge Story in the case above cited. The party directly liable upon the claim chargeable upon the vessel may, in this court be joined with the ship in one suit, and a decree may be prayed and taken against him in uno flatu with that against the vessel. Or, for want of a prayer to that effect at the initiation of the suit, the libel may be amended by inserting it, even after decree in rem rendered, if that decree proves fruitless to the libellant, and if the party sought to be personally charged has appeared and contested the suit. The expense and delay of two or three actions requiring to be disposed of upon identically the same pleadings and proofs, are thus saved the creditors, and the association of remedies promotes the simplicity and celerity so much sought for and favored in admiralty procedure.

It seems to me, also, that this is the spirit of the English practice, both early and modern, although under that system a somewhat circuitous method was originally employed in effecting the object. Instead of directly arresting the party sought to be made personally responsible, it seems, in actions lying purely in rem against vessels, that when the owner enters an appearance, the court thereupon takes jurisdiction over him individually; because, appearance in the English admiralty being by stipulation, the court thus acquires the power to act against him in personam. 2 Browne, Civ. Law, 398;

Id. 407–409. And his fide jussors are compelled to satisfy the condemnation and costs. Clarke, Praxis, tits. 4, 5, 12.

The practice continues substantially the same in the English admiralty to this day. The St. Johan, 1 Hagg. Adm. 334; The Triune, 3 Hagg. Adm. 114. The case of The St. Johan also shows, that where the remedy is doubtful against the vessel, but is legal and equitable against the owner, the court will avail themselves of his appearance to decree the debt and costs against him personally. This personal appearance is also constrained by the course of the court; for in suits in rem, on his failure to intervene, the property is absolutely condemned to the libellant. 2 Browne, Civ. Law, 400.

I am not aware that any confusion or perplexity need arise in respect to the decree to be pronounced in a case thus prosecuted. If the action be in rem only, a decree is rendered for the sum which the prevailing party is entitled to recover, and the thing is condemned, i. e., ordered to be sold to satisfy the decree. If the suit is in personam, the decree is the same in all essentials, varying only in that it directs execution by fieri facias or by capias ad satisfaciendum, instead of venditioni exponas.

I think that the mode of procedure resorted to in this case is not only justifiable upon authority, but that it is one that ought to be encouraged, as tending to prevent a multiplicity of actions for the same cause, in cases where all the rights and remedies might be equally well secured in a single suit. An action against both the ship and the master may oftentimes be indispensable. Cases not unfrequently occur in which neither remedy is separately adequate to afford complete relief. The court will, however, be cautious so to guard the practice that exorbitant stipulations shall not be exacted, and that double arrests shall not be made in cases of doubtful right or for trivial amounts. Betts, Adm. Prac. 20.

In the present case, the ship and master are separately and conjointly liable for the passage-money advanced by the libellant, and also for the safe delivery of the merchandise and baggage shipped by him. The master may also be individually liable for any wilful misconduct in the transaction, committed by him, but out of the scope of his authority as master, by which the libellant has been prejudiced, although the ship and owner may not be conjointly chargeable therefor. The libel is so drawn as to leave it ambiguous, whether damages are sought to the amount of the value of the merchandise and baggage and specie charged to have been shipped, as not having been delivered at all, or whether it only seeks compensation for the oppressive and tortious conduct of the master, in baffling the libellant in obtaining his rights and property from the ship or master. If the latter is the only object of the action, there certainly can be but

slight reason for continuing the suit against both the vessel and the master; and on a proper application, the court will see that the owners are relieved from all unreasonable burdens in that respect.

The first three exceptions, relating to the jurisdiction of the court, are therefore disallowed. The remaining four relate to the formal construction of the libel. As it does not conform to the requirements of rule 23 of the supreme court, those exceptions are allowed, save only exception 5, which is disallowed, the libel being sufficient in the particular to which that exception relates. The libellant must take proper measures to reform his pleading before proceeding with the cause. This order is without costs.

[Subsequently the cause came up for final hearing, when there was a decree for libellant, with costs of suit. Case No. 18,209.]